UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

FRANCIS B. PILVALIS,

    Plaintiff,

  v.

LOCKHEED MARTIN CORPORATION,

    Defendant.

Civil No. 12-1354 (NLH/JS)

<u>OPINION</u>

**APPEARANCES:**
Francis B. Pilvalis
314 Hartford Road
Mt. Laurel, New Jersey 08054
 *Pro Se Plaintiff*,

Jennifer A. Rygiel-Boyd, Esquire
Ogletree Deakins Nash Smoak & Stewart
10 Madison Avenue
Suite 400
Morristown, New Jersey 07960
 *Attorney for Defendant Lockheed Martin Corporation*.

**<u>HILLMAN, District Judge</u>**

  Presently before the Court is Defendant Lockheed Martin Corporation's ("Lockheed Martin") Motion to Dismiss the complaint of Plaintiff Francis B. Pilvalis. [Docket No. 3.]  For the reasons expressed below, Defendant's Motion will be granted.

**I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

  Defendant Lockheed Martin is a global security and

information technology corporation based in Bethesda, Maryland. Plaintiff Francis B. Pilvalis is an engineer formerly employed by Defendant.  At all relevant times, Plaintiff was a member of the union, Association of Scientists and Professional Engineering Personnel ("ASPEP").  ASPEP and Lockheed Martin were parties to a collective bargaining agreement which set forth union member salary levels and job descriptions.  (Compl. at 1.)

Lockheed Martin first hired Pilvalis as a Senior Engineer in its Moorestown, New Jersey office.[1]  (Am. Compl. at 1.)  In January of 2002, Defendant transferred Pilvalis to its branch in Mississippi.  (Id.)  According to Plaintiff, Defendant promised that, upon his transfer, he would assume the position of Senior LAN Engineer.[2]  (Id. at 3.)  Instead, however, Defendant assigned Pilvalis to a SPY RADAR[3] position — a position with which he had no experience, knowledge, or education.  (Id.)  Initially, Pilvalis apparently tried to decline the position, but Lockheed Martin allegedly threatened that he would lose his job and would

---

[1]  The date of Pilvalis's initial hire in New Jersey is unknown.

[2]  Plaintiff did not define this term.  The Court assumes that a "LAN" engineer is an individual responsible for the implementation and maintenance of "local area networks" of communications.

[3]  Once again, Plaintiff did not define this term.  The Court assumes the Plaintiff is referring to the AN/SPY-1 a radar system manufactured by Lockheed Martin for the United States Navy.  See http://en.wikipedia.org/wiki/AN/SPY-1 (last visited March 20, 2013).

need to pay back all relocation expenses if he did not accept the SPY RADAR position.  (Id.)  Pilvalis presently claims that he suffered poor performance ratings and did not receive proper job promotions and salary increases as a result of the new position for which he was unqualified.  (Id.)

In December of 2005, Pilvalis was transferred back to the Moorestown, New Jersey location.  (Id. at 1.)  Pilvalis avers that, at some point while employed in Moorestown in 2007 or 2008, he received an "LM MS2 Moorestown Engineering Salary Survey," which apparently contained information regarding salary and collective bargaining agreement rights that had not previously been disclosed to him.  (Id.; Compl. at 2.)  Pilvalis presently contends that, upon reviewing the salary survey, he discovered that he was significantly underpaid during his time in Mississippi, and that Lockheed Martin had likewise failed to disclose certain rights available to him under the collective bargaining agreement during that time.  (Am. Compl. at 3.)

On November 23, 2011, Plaintiff filed a civil action in the Superior Court of New Jersey, alleging that Lockheed Martin failed to pay him in accordance with the salary levels provided in the collective bargaining agreement between Defendant and ASPEP.  More specifically, in this initial Complaint, Plaintiff alleged that Defendant was "negligent and fraudulent" in failing to "provide pertinent information to Plaintiff informing him of

3

the existence of the CBAC or any rights Plaintiff was entitled to under the Union Contract." (Compl. at 2.)  Plaintiff further averred that, as a result of Defendant's actions, he suffered damages for lost wages, interest, pension, 401K funds, job opportunities, promotions, and declining health. (Compl. at 3.)

Defendant timely removed this matter to federal court on March 6, 2012 on the grounds that Plaintiff's state-law causes of action based on his collective bargaining agreement were preempted by § 301 of the Labor Management Relations Act ("LMRA").  On March 27, 2012, Defendant filed the instant Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Without requesting leave of court, and more than twenty-one days after the filing of Defendant's Motion to Dismiss, Plaintiff filed an Amended Complaint on May 4, 2012.  [Docket No. 6]. Plaintiff's Amended Complaint contains the following five claims for relief: (1) breach of contract, (2) breach of implied-in-fact contract, (3) breach of implied covenant of good faith and fair dealing, (4) promissory estoppel, and (5) "intentional infliction of emotional upset." (Am. Compl. at 2-4).  Plaintiff also argues in his Amended Complaint that he is entitled to an equitable tolling of the applicable statute of limitations because he has been "pursuing his rights diligently . . . and some extraordinary circumstance stood in his way." (Id. at 3.)  Plaintiff filed a Response on May 18, 2012, to which Defendant replied on May 29,

4

2012. [Docket Nos. 11 & 13.]  Accordingly, this matter is now ripe for judicial consideration.

## II. JURISDICTION AND REMOVAL

The Court has federal question subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.[4]  Specifically, this matter was removed to federal court under 28 U.S.C. § 1446[5] on the basis that Plaintiff's state-law claims are preempted by § 301 of the Labor Management Relations Act,[6] and therefore a federal question is present which this Court has the judicial authority to resolve.

Removal of an action initially filed in state court is only

_____

[4] Section 1331 provides that:

The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

28 U.S.C. § 1331.

[5]  The removal statute provides that:

A defendant [ ] desiring to remove any civil action from a State court shall file in the district court of the United States for the district and division within which such action is pending a notice of removal . . . containing a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action.

28 U.S.C. § 1446(a).

[6] 29 U.S.C. § 185.

proper if the action "originally could have been filed in federal court." Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987). Absent diversity of citizenship, the presence of a federal question is necessary to support removal. Id. The presence of a federal question is governed by the "well-pleaded complaint rule," which provides that federal jurisdiction is proper if a federal question is evident from the face of the plaintiff's pleading. Id.; see also Louisville & Nashville R.R. v. Mottley, 211 U.S. 149 (1908). The Supreme Court has recognized, however, that the complete preemption doctrine is an "independent corollary" to the well-pleaded complaint rule. See Caterpillar, 482 U.S. at 393. In other words, since the preemptive force of certain federal statutes is so great as to convert otherwise ordinary state law claims into federal actions, some matters may be removable on federal preemption grounds even if a federal question does not immediately appear on the face of the well-pleaded complaint. See Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 65 (1987); Franchise Tax Bd. v. Constr. Laborers Vacation Trust for S. Ca., 463 U.S. 1, 22 (1983); Caterpillar, 482 U.S. at 392-93.

One such instance of complete preemption occurs in the context of § 301(a) of the LMRA, which provides as follows:

> Suits for violations of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any District Court of the United States having jurisdiction

over the parties.

29 U.S.C. § 185(a).  Section 301 governs disputes between employers, unions, and employees that are parties to a collective bargaining agreement.  Id. at 211.  The Supreme Court has previously recognized that:

> [T]he pre-emptive force of § 301 is so powerful as to displace entirely any state cause of action "for violation of contracts between an employer and a labor organization."  Any such suit is purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action in the absence of § 301.

Franchise Tax Bd., 463 U.S. at 23.  In Allis-Chalmers Corp. v. Lueck, however, the Supreme Court also made clear that "not every dispute concerning employment, or tangentially involving a provision of a collective bargaining agreement, is pre-empted . . . [because] it would be inconsistent with congressional intent . . . to preempt state rules that . . . establish rights and obligations independent of a labor contract."  471 U.S. 202 (1985).  As such, a state law claim will be found to be preempted by § 301 if the claim is: (1) founded directly on rights created by a collective-bargaining agreement, or (2) "substantially dependent upon" or "inextricably intertwined with" an analysis of a collective bargaining agreement.  Shanefelter v. U.S. Steel Corp., 784 F.Supp.2d 550, 558 (W.D. Pa. 2011) (quoting Caterpillar, 482 U.S. at 394); see also Int'l Brotherhood of Elec. Workers v. Hechler, 481 U.S. 851, 858 (1987) .

In the instant case, neither party disputes that resolution

7

of this matter will require interpretation of the terms of a collective bargaining agreement governed by federal law. Accordingly, removal to this Court was proper on the basis that the Court has federal question subject matter jurisdiction over this dispute.

## III. STANDARD OF REVIEW

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005). It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under the liberal federal pleading rules, it is not necessary to plead evidence, and it is not necessary to plead all the facts that serve as a basis for the claim. Bogosian v. Gulf Oil Corp., 562 F.2d 434, 446 (3d Cir. 1977). However, "[a]lthough the Federal Rules of Civil Procedure do not require a claimant to set forth an intricately detailed description of the asserted basis for relief, they do require that the pleadings give defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."

8

Baldwin Cnty. Welcome Ctr. v. Brown, 466 U.S. 147, 149-50 n.3 (1984) (quotation and citation omitted).

A district court, in weighing a motion to dismiss, asks "'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim.'" Bell Atlantic v. Twombly, 550 U.S. 544, 563 n.8 (2007) (quoting Scheuer v. Rhoades, 416 U.S. 232, 236 (1974)); see also Ashcroft v. Iqbal, 556 U.S. 662, 684 (2009) ("Our decision in Twombly expounded the pleading standard for 'all civil actions' . . . ."); Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) ("Iqbal . . . provides the final nail-in-the-coffin for the 'no set of facts' standard that applied to federal complaints before Twombly.").

Following the Twombly/Iqbal standard, the Third Circuit has instructed a two-part analysis in reviewing a complaint under Rule 12(b)(6).  First, the factual and legal elements of a claim should be separated; a district court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions.  Fowler, 578 F.3d at 210 (citing Iqbal, 129 S. Ct. at 1950).  Second, a district court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "'plausible claim for relief.'"  Id. (quoting Iqbal, 129 S. Ct. at 1950).  A complaint must do more than allege the plaintiff's entitlement to relief.  Id.; see also

Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (stating that the "Supreme Court's Twombly formulation of the pleading standard can be summed up thus: 'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element.  This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element"). A court need not credit either "bald assertions" or "legal conclusions" in a complaint when deciding a motion to dismiss. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1429-30 (3d Cir. 1997).  The defendant bears the burden of showing that no claim has been presented.  Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005) (citing Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991)).

Finally, a court in reviewing a Rule 12(b)(6) motion must only consider the facts alleged in the pleadings, the documents attached thereto as exhibits, and matters of judicial notice.  S. Cross Overseas Agencies, Inc. v. Kwong Shipping Grp. Ltd., 181 F.3d 410, 426 (3d Cir. 1999).  A court may consider, however, "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."  Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).  If any

10

other matters outside the pleadings are presented to the court, and the court does not exclude those matters, a Rule 12(b)(6) motion will be treated as a summary judgment motion pursuant to Rule 56.  See Fed. R. Civ. P. 12(b).

## IV.  PRELIMINARY MATTERS

Prior to reaching the merits of Defendant's Motion to Dismiss, the Court must first address the issues related to the filing of Plaintiff's initial Complaint in state court and his subsequent untimely Amended Complaint in federal court.

As indicated above, Plaintiff, appearing pro se, filed his initial Complaint in state court on November 23, 2011.  The claims in Plaintiff's initial Complaint appeared to be based on claims of fraud and negligence.  Lockheed Martin moved to dismiss the initial Complaint under Rule 12(b)(6) on the grounds that Plaintiff failed to state a claim upon which relief could be granted.  Rather than filing a response to Defendant's Motion, Plaintiff filed an Amended Complaint without seeking leave of Court to do so.  In the amended pleading filed in federal court, Plaintiff specifically enumerates five causes of action, none of which are for fraud or negligence.

Rule 15(a) of the Federal Civil Rules governs the procedure for amendment of a pleading.  The Rule provides that, without the adversary's consent or the court's leave, a party "may amend its

11

pleading once as a matter of course" within 21 days of serving it or 21 days after a responsive pleading or motion under Rule 12(b), (e), or (f) is served.  <u>See</u> Fed. R. Civ. P. 15(a)(1). After this 21-day deadline expires, "a party may amend its pleading only with the opposing party's written consent or the court's leave."  <u>Id.</u>  In the District of New Jersey, the Local Civil Rules also require that, "[u]pon filing a motion for leave to file an amended complaint . . . the moving party shall attach to the motion a copy of the proposed pleading or amendments and retain the original until the Court has ruled."  L. Civ. R. 7.1(f).

Here, Plaintiff filed his Amended Complaint 163 days after he filed his initial Complaint and 38 days after Defendant filed its Motion to Dismiss under Rule 12(b)(6).  Thus, Plaintiff's amendment was well after the 21 day period after he served his initial Complaint and the 21 day period after the Defendant's filing of a responsive motion under Rule 12(b).  Accordingly, in order to file an amended pleading under these circumstances, Plaintiff was required to seek and obtain leave of court. Plaintiff did not do so, however, nor did he attach a copy of the proposed amended document as Local Rule 7.1(f) requires.

Rule 15(a) also provides, however, that "[t]he court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a).  The Third Circuit has interpreted this provision to mean

12

that leave to amend should be "liberally" granted.  Heyl v. Patterson Intn'l, Inc. v. F.D. Rich Housing of the Virgin Islands, Inc., 663 F.2d 419, 425 (3d Cir. 1981); Dole v. Arco Chem. Co., 921 F.2d 484, 487 (3d Cir. 1990); Bechtel v. Robinson, 886 F.2d 644, 652 (3d Cir. 1989); see also Phila. Church of Our Savior v. Concord Twp., No. Civ. A. 03-1766, 2004 WL 228684, at *2 (E.D. Pa. Feb. 4, 2004).  In Foman v. Davis, 371 U.S. 178 (1962), the Supreme Court enumerated several factors for district courts to consider in ruling on a Rule 15(a) motion to amend:

> In the absence of any apparent or declared reason — such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. — the leave sought should, as the rules require, be "freely given."

Id.; see also Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002).  Absent the presence of one or more of these factors, the Third Circuit has found that "it is an abuse of discretion for a district court to deny leave to amend."  Alvin v. Suzuki, 227 F.3d 107, 121 (3d Cir. 2000); see also Phila. Church of Our Savior, 2004 WL 228684 at * 2; Allen v. N.J. Dep't of Human Servs., No.Civ.A.06-5229, 2007 WL 2306664, at *6 (D.N.J. Aug. 8, 2007) (Simandle, J.).

Indeed, district courts within the Third Circuit's appellate jurisdiction have considered a plaintiff's amended pleading despite a failure to seek leave of court prior to its filing.

13

See Deeley v. Genesis Healthcare Corp., No. Civ. A. 10-1242, 2010 WL 3239352, at *2 (E.D. Pa. Aug. 16, 2010) ("[P]laintiff's failure to obtain consent or leave to amend does not preclude this Court from accepting his second amended complaint"); Beale v. Dep't of Justice, No. Civ. A. 06-2186, 2007 WL 327465 (D.N.J. Jan. 30, 2007)(Simandle, J.).  Courts in the District of New Jersey have likewise considered amended pleadings that did not conform to the requirements of Local Rule 7.1(f), particularly in cases involving pro se plaintiffs.  See Allen, 2007 WL 2306664 at *6 ("Because Plaintiff proceeds without an attorney, his failure to follow a technical rule like Local Civil Rule 7.1(f) could be excused and he could receive another opportunity to attach his proposed Amended Complaint.").  In Beale, the plaintiffs twice amended their complaint without seeking leave of court.  2007 WL 327465 at *3.  Despite the fact that it was untimely and improperly filed, Judge — now Chief Judge — Simandle accepted the plaintiffs' second amended complaint because the Court found that "justice and judicial economy" so required.   Id.

This Court likewise finds that justice and judicial economy require a consideration of Plaintiff's Amended Complaint under the instant circumstances.  While the amended pleading was untimely and improperly filed, the Court is cognizant of the fact that Pilvalis is a pro se plaintiff perhaps unfamiliar with the law and civil motions practice before this Court.  Further, none

14

of the factors set forth by the Supreme Court in <u>Foman v. Davis</u> appear to be present here.  There is no indication in the record that Plaintiff's filing of an amended complaint was motivated by an improper purpose such as undue delay or bad faith.  Nor is there any indication that Pilvalis repeatedly failed to cure prior procedural deficiencies in this litigation.  Furthermore, other than the fact that it must now consider and respond to additional arguments, Defendant has not alleged that it would be prejudiced by the Court's acceptance of Pilvalis's amended pleading.  <u>See</u> <u>Deeley</u>, 2010 WL 3239352 at *3 ("The prejudice that results from requiring defendants to file an additional motion to dismiss is insufficient to refuse plaintiff leave to file his second amended complaint.") (internal citations omitted).  In fact, Defendant has seized the opportunity to respond to Plaintiff's additional counts set forth in his Amended Complaint in its Reply memorandum submitted to the Court.  Further, an amendment of Pilvalis's initial Complaint does not appear to be futile on its face.  To the contrary, Pilvalis's amended filing appears to be more organized and coherent, and, unlike his initial Complaint, directly enumerates specific causes of action against Lockheed Martin.  As such, despite the fact that it was untimely and improperly filed, this Court will accept and consider Plaintiff's Amended Complaint because justice and judicial economy so require.

Having accepted Plaintiff's Amended Complaint, the Court must now address whether Pilvalis's initial or Amended Complaint is the operative pleading.  In federal court, the general rule is that, once an amended complaint is filed, it becomes the operative pleading and replaces all prior versions of the complaint.  See Snyder v. Pascack Valley Hosp., 303 F.3d 271, 276 (3d Cir. 2002) ("An amended complaint supercedes the original version in providing the blueprint for the future course of a lawsuit.").  Other courts in this District, however, have found that initial and amended complaints can be jointly interpreted in certain limited circumstances.  See Dukes v. Lancer Ins. Co., No.Civ.A.08-4948, 2009 WL 3128467, at *1 n.2 (D.N.J. Sept. 24, 2009) (jointly interpreting initial and amended complaints where it appeared that pro se plaintiff merely intended to "supplement" initial pleading by adding four counts to the counts already set forth in initial complaint).  The Court sees no reason not to apply the general rule to the instant circumstances.  As such, it will only consider the claims set forth in Plaintiff's Amended Complaint. [7]

---

[7]  In his Amended Complaint, Plaintiff appears to have abandoned his fraud and negligence claims raised in his initial Complaint, and rather delineates five specific causes of action against Defendant based on breach of contract and emotional distress.  Subsumed within the new counts in his Amended Complaint, however, Pilvalis sporadically refers to Defendant's conduct as "grossly negligent" and "fraudulent."  The Court is aware that Pilvalis is proceeding pro se and that such pleadings are afforded a more liberal reading and interpretation.  See

<u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976).  However, even though
pro se complaints are held to less stringent standards than
formal pleadings drafted by lawyers, they must still plead the
essential elements of a claim and are not excused from conforming
to the standards of the Rules of Civil Procedure.  <u>McNeil v.
United States</u>, 508 U.S. 106, 113 (1993).

     Here, even if the Court were to consider Plaintiff's
references to negligence and fraud in his amended pleading as
separate counts, such claims would nonetheless fail.  First these
claims are substantially related to or inextricably intertwined
with an interpretation of the collective bargaining agreement
between Pilvalis's union and Lockheed Martin, and would therefore
be preempted by § 301 of the LMRA.  The Third Circuit has also
recognized, however, that tort claims which can be resolved
independent of the collective bargaining agreement are not
preempted, and state law continues to apply to such claims.  <u>See
Berda v. CBS Inc.</u>, 881 F.2d 20, 24-25 (3d Cir. 1989).  Here,
however, even if Plaintiff's purported negligence and fraud
claims were not preempted and state law applied to them, they
nonetheless would fail because Pilvalis has not sufficiently made
out a claim under Rule 12(b)(6).

     In order to sustain a cause of action based on negligence,
a plaintiff must prove: (1) a duty of care, (2) a breach of that
duty, (3) proximate cause, and (4) actual damages.  <u>Polzo v.
Cnty. of Essex</u>, 960 A.2d 375, 384 (N.J. 2008)(internal citations
& quotations omitted).  In his Amended Complaint, Plaintiff has,
at most, only fulfilled the third and fourth elements in stating
that: "[t]he breach of this contract by Defendant was without an
arguable basis and was accompanied by conduct so willful and so
grossly negligent as to constitute an independent tort.  As a
direct and proximate result of the Defendant's wrongful conduct .
. . the Plaintiff has suffered, and continues to suffer, damages.
The exact amount of these damages are unknown due to Defendant's
refusal to provide information[.]"  (Am. Compl. at 2.)  In order
to survive dismissal, however, Pilvalis must establish all the
elements of negligence.  Moreover, the statements above appear to
be nothing more than mere conclusory statements.  The law is
clear that a proper claim "requires more than labels and
conclusions." <u>Twombly</u>, 550 U.S. 544, 555 (2007); <u>Iqbal</u>, 129 S.
Ct. at 1949-50.  As such, even if the Court were to consider
Plaintiff's Amended Complaint to include a cause of action based
on negligence, such a claim would nonetheless fail.

     Any claim based on fraud would likewise fail under the
Federal Civil Rules.  Rule 9(b) provides that, when alleging a
cause of action based on fraud, "a party must state <u>with</u>
particularity the circumstances constituting fraud[.]"  Fed. R.

17

**V.   DISCUSSION**

Defendant moves to dismiss Plaintiff's Amended Complaint on the grounds that: (1) Plaintiff's contract claims are barred by the applicable statute of limitations, and (2) Plaintiff fails to

---

Civ. P. 9(b).  Rule 9(b) applies with equal force to fraud actions under federal statutes as to those actions that are based on state law but brought in federal court.  See Frederico v. Home Depot, 507 F.3d 188, 200 (3d Cir. 2007).  To satisfy the heightened pleading standard, "the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." Id. (citing Lum v. Bank of Amer., 361 F.3d 217, 224 (3d Cir. 2004)).   Under New Jersey law, the five elements of a fraud action are: (1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages.  Frederico, 507 F.3d at 200 (citing Gennari v. Weichert Co. Realtors, 148 N.J. 582, 610 (1997)).

Subsumed within the promissory estoppel claim in his amended pleading, Pilvalis contends that Lockheed Martin's alleged withholding of certain information and failure to appoint him to the position of a Senior LAN Engineer was a "fraudulent misrepresentation" that caused him to suffer "poor performance ratings, mental, emotional, physical distress, job promotions, and proper raises in salary."  (Am. Compl. at 3.)  This statement, however, does not fulfill the five elements of fraud under New Jersey law, let alone establish "with reasonable particularity" any circumstances indicating fraud on Lockheed Martin's part.  Completely absent are any facts describing "who, what, where, when, and how" the alleged fraud occurred that would inject "some measure of substantiation" into Pilvalis's fraud claim.  Miracle Temple Christian Acad. v. Church Mut. Ins. Co., No.Civ.A.12-995, 2012 WL 1286751, at *3 (E.D. Pa. Apr. 16, 2012); Frederico, 507 F.3d at 200.

Accordingly, even if the Court were to afford Plaintiff's Amended Complaint an incredibly broad reading so as to consider his alleged fraud and negligence claims, these claims would nonetheless fail because they would either be federally preempted or dismissed for failure to adhere to the pleading standards set forth by the Federal Rules of Civil Procedure.

18

sufficiently plead claims for promissory estoppel and intentional infliction of emotional distress.[8]  In response, Plaintiff avers that he has established all the claims set forth in his Amended Complaint, and likewise requests a tolling of the statute of limitations because he has diligently pursued his rights and extraordinary circumstances were present that prevented him from filing suit sooner.  The Court considers each argument below.

### A.   The Statute of Limitations and Breach of Contract Claims

In his Amended Complaint, Pilvalis makes three claims against Lockheed Martin that fall under the general umbrella of a breach of contract: (1) a standard breach of contract, (2) breach of an implied-in-fact contract, and (3) breach of the covenant of good faith and fair dealing.[9]  More specifically, Pilvalis

---

[8]  Count E of the refers to this claim as "Intentional Infliction of Emotional Upset."  (Am. Compl. at 4.)  At other times in the amended pleading and in his Reply brief, however, Plaintiff refers to this claim more accurately as his "intentional infliction of emotional distress" claim.

[9]  The Court considers these three claims together because causes of action alleging breach of an implied-in-fact contract or breach of the covenant of good faith and fair dealing are all rooted in contract and typically analyzed in conjunction with standard breach of contract actions.  See Leonardis v. Burns Intn'l Sec. Servs., Inc., 808 F.Supp. 1165, 1175 (D.N.J. 1992)(jointly considering direct and implied breach of contract claims in § 301 action); Campbell v. Sedgwick, Detert, Moran & Arnold, No.Civ.A.11-0642, 2012 WL 2576279, at *6 (D.N.J. July 2, 2012) (characterizing implied-in-fact contract claim as a breach of contract claim based on an implied contract); Jaclin v. Sea-Land Corp., No.Civ.A.86-2791, 1989 WL 200943, at *3 (D.N.J. Aug. 23, 1989) ("[I]t is clear that New Jersey has determined to recognize an implied covenant of good faith and fair dealing in

maintains that Lockheed Martin breached the collective bargaining agreement by failing to pay him in accordance with the proper pay scale as provided in the agreement, and did not promote him to a Senior LAN Engineer position as was allegedly promised to him upon his transfer to Mississippi.

The Court begins its analysis by recognizing that all three contract claims are based on an alleged breach of the collective bargaining agreement between Lockheed Martin and Pilvalis's union, ASPEP.  It is well-established that suits alleging a breach of contract based on a collective bargaining agreement are preempted by § 301 of the LMRA, and are thus governed by federal law.  See Textile Workers v. Lincoln Mills, 353 U.S. 448, 456 (1957); Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 211 (1985); Teamsters v. Lucas Flour Co., 369 U.S. 95, 103 (1962); Franchise Tax Bd. v. Constr. Laborers Vacation Trust for S. Ca., 463 U.S. 1, 23 (1983).  Neither party here disputes that Pilvalis's breach of contract claims based on his collective bargaining agreement are preempted by the LMRA.  Defendant contends, however, that Plaintiff's contract claims are time-barred by both the federal six-month limitations period prescribed by § 10(b) of the LMRA and the six-year time limit of New Jersey's statute of limitations for contract claims.

---

all contracts, . . . whether their terms are expressly set out or implied in the employer's actions, statements or literature.").

In the seminal case of <u>DelCostello v. International Brotherhood of Teamsters & United Steelworkers of America</u>, 462 U.S. 151 (1962), the Supreme Court held that, since there is typically no federal statute of limitations for suits arising under federal civil law, Congress intended for federal courts to "borrow the most suitable statute or other rule of timeliness" from "the most closely analogous statute of limitations under state law." <u>Id.</u> at 158. The Supreme Court noted, however, that "[i]n some circumstances, [] state statutes of limitations can be unsatisfactory vehicles for the enforcement of federal law," and that limitations periods in such instances should be drawn from other sections of federal law that prescribe timing rules. <u>Id.</u> at 161-62. The <u>DelCostello</u> Court held that, when deciding which limitations period to apply, courts should first determine whether the plaintiff's suit constitutes a "pure" or "hybrid" § 301 claim. <u>Id.</u> at 164-65. "Pure" claims are standard § 301 actions in which a union brings suit against an employer on behalf of an injured employee. <u>Id.</u> at 164; <u>Serv. Employee Intn'l Union Local 36 v. City Cleaning Co.</u>, 982 F.2d 89, 94 n.2 (3d Cir. 1992). "Hybrid" claims, on the other hand, are suits brought by an employee against both his employer and union. <u>DelCostello</u>, 462 U.S. at 164. In a hybrid action, the suit against the employer rests on an alleged breach of the collective bargaining agreement, while the claim against the union is based on the

union's alleged breach of its duty of fair representation of the employee.  Id.  A pure § 301 claim borrows the analogous state law statute of limitations.  Serv. Employee Intn'l Union Local 36, 982 F.2d 89 at 94-96.  By contrast, hybrid claims are subject to the six-month federal limitations period of the LMRA. Carpenter v. WaWa, No. Civ. A. 09-2768, 2009 WL 4756258, at *4 (E.D. Pa. Dec. 3, 2009) (citing DelCostello, 462 U.S. at 151; Vadino v. A. Valley Engineers, 903 F.2d 253, 260 (3d Cir. 1990)).

At first blush, it is not immediately apparent whether Pilvalis's contract claims fall into the pure or hybrid rubric. On their face, the claims in the Amended Complaint are not pure because they are brought by Pilvalis's union against his former employer.  See Carpenter, 2009 WL 4756258 at *4 ("Pure claims [] can only be asserted by unions against employers[.]").  By the same token, they are not standard hybrid actions because Pilvalis has only filed suit against his employer and has not alleged a fair representation claim against his union.  In DelCostello, the Supreme Court stated that: "[t]he employee may, if he chooses, sue one defendant and not the other; but the case he must prove is the same whether he sues [the employer], the [union], or both."  462 U.S. at 164.  District courts within the Third Circuit have interpreted this language to mean that, in cases where employees solely assert claims against their former employers for breach of the collective bargaining agreement

22

without likewise naming the union as a defendant, such claims
nonetheless constitute hybrid actions.  See Price v. Gen. Cable
Indus., Inc., No.Civ.A.05-424J, 2006 WL 3393686, at *6 (W.D. Pa.
Sept. 29, 2006); Carpenter, 2009 WL 4756258 at *4; Swayne v. Mt.
Joy Wire Corp., No.Civ.A.10-3969, 2012 WL 1114379, at *7 n.26
(E.D. Pa. Mar. 30, 2012)("Pure claims can only be asserted by
unions against employers.  However, an employee can bring a
hybrid claim against his employer without naming the union as a
defendant.").  For example, as recognized by another court in
this District, "[t]he law is clear that regardless of who is
named as a defendant, a hybrid claim is present[] if an employee
has a cause of action against both the employer and the union,
where the two claims are inextricably linked, and where the case
to be proved is the same against both.  Therefore, even though
plaintiff did not name the union as a defendant, in fact a hybrid
claim implicitly exists."  Carrington v. RCA Global Commc's,
Inc., 762 F.Supp. 632, 637 (D.N.J. 1991) (citing McKee v. Transco
Prod., Inc., 874 F.2d 83, 86 (2d Cir.1989); Cole v. Pathmark of
Fairlawn, 672 F.Supp. 796, 806 (D.N.J. 1987))(internal quotation
marks omitted).  The law in this Circuit is likewise clear that,
even if the plaintiff has only asserted claims against his former
employer under § 301, "the employee must still allege, and
eventually prove, that the union breached its duty of fair
representation" in order to successfully and completely establish

23

a viable hybrid claim.  Swayne, 2012 WL 1114379 at *7 (citing Carpenter, 2009 WL 4756258 at *4)); Serv. Employee Intn'l Union Local 36, 982 F.2d at 94 n.2 (valid hybrid actions are comprised of claims "brought by an employee alleging that the employer breached the collective bargaining agreement and that the employee's union violated its duty to fairly represent the employee.")(emphasis in original); Price, 2006 WL 3393686 at *6 ("Thus, anytime a covered employee attacks her termination under a collective bargaining agreement, she may not do so without alleging some failure in the process mandated by the CBA itself.").  "In order to demonstrate that a union violated its duty of fair representation, a plaintiff must show that the union's conduct toward a member of the collective bargaining union was 'arbitrary, discriminatory or in bad faith.'"  Swayne, 2012 WL 1114379 at *7 (citing Morris v. United Steel Workers of Amer. Local 4889, No.Civ.A.08-3398, 2010 WL 933807, at *5 (E.D. Pa. Mar. 16, 2010)) (further citation omitted).

In the instant case, Pilvalis has not alleged any claims against ASPEP, let alone established that it acted in bad faith or in an arbitrary and discriminatory manner.  As such, he has failed to properly allege a § 301 hybrid claim.  See Swayne, 2012 WL 1114379 at *9 ("[P]laintiff's allegations fail to state a section 301 claim because they do not plausibly suggest that the Union violated its duty of fair representation.").  On the other

24

hand, Pilvalis would trigger the six-month statute of limitations if he actually asserted a proper § 301 claims alleging that ASPEP violated its duty.  See Price, 2006 WL 3393686 at *6 ("But by alleging some violation of that duty, Price would trigger § 10(b) and her claim would be untimely for being filed after six months had lapsed.").  Although Pilvalis's breach of contract claims are premised upon conduct that occurred during his tenure in Mississippi and subsequent return to New Jersey, he did not file his lawsuit until November of 2011, well outside the six-month time requirement.[10]

---

[10]  Lockheed Martin contends that the statute of limitations began to run in January of 2002 because Plaintiff's claims all stem from Defendant's failure to pay him the proper salary and promote him to a senior position at that time.  In his Amended Complaint and subsequently filed Reply memorandum, Pilvalis asserts that he is entitled to an equitable tolling of the statute of limitations because he has been diligently pursuing his rights, and extraordinary circumstances prevented him from filing suit sooner.  It is unclear from Plaintiff's filings, however, when he believes the clock for the statute began to run. In his Amended Complaint, Pilvalis avers that:

> Plaintiff believes that the complaint should be tolled back to January 27, 2002 rather than be considered from Plaintiff's NJ transfer Date of December 2005 (formally indicated on LM MS2 HR Records as January 2006) as there was an Extraordinary condition created by Defendant's refusal to provide any Collective Bargaining Agreement documentation as required by that contract and failure to respond to Plaintiff's continuing efforts to resolve the underpayment and incorrect Engineering Classification.

(Am. Compl. at 3.)  In his Reply, however, Pilvalis contends that he complied with the statute of limitations because "[t]wo individual situations occurred[:] Lockheed Martin failed to comply with agreements made to Plaintiff at initial hire in 2002 and in 2006 upon transfer back to Moorestown[.]"  (Pl.'s Reply at 4.)  Further, in both the Amended Complaint and Reply, Pilvalis

avers that he had no knowledge of the breach of the collective bargaining agreement until he received a copy of the salary survey in 2007 or 2008.

Regardless of when the clock began to run, Plaintiff's arguments for a tolling of the statute fail for several reasons. First, and most obviously, irrespective of which of the above dates were to apply for statute of limitations purposes, each one would be considered untimely.  Pilvalis filed his initial Complaint in state court on November 23, 2011.  Thus, it does not matter whether the statute began to run in 2002, 2005, 2006, 2007, or 2008, because each and every one of these dates fall outside the six-month time window prescribed by the LMRA.

Further, it has been recognized that "[c]ourts generally apply a discovery rule to the statute of limitations for a 'hybrid' claim which provides that the period begins to run at the point when a plaintiff knew or, through reasonable diligence, should have known that he or she possessed a cause of action. Specifically, the clock begins to run when the plaintiff knew or should have known of the acts constituting the union's wrongdoing."  Carrington, 762 F.Supp. at 638-39 (internal citations omitted).  As discussed at length above, Plaintiff has not properly plead a § 301 hybrid claim because he does not allege a duty of fair representation claim against his union. Thus, it is not possible to determine when the clock began to run because Pilvalis has not established when he learned of the acts constituting ASPEP's wrongdoing.

Moreover, even if Plaintiff had properly alleged his § 301 claim, it would still be time-barred because the discovery rule for hybrid claims begins to run at the point when the plaintiff knew, or should have known, that he possessed a cause of action. Id.  In Carrington, the plaintiff was discharged from his position in 1988, but did not file his hybrid action until early 1991.  Id. at 635.  The plaintiff argued that his claim was not time-barred because the clock did not start to run until August of 1990 when he first consulted with an attorney regarding the terms of the collective bargaining agreement and learned of the union's wrongdoing, thus falling within the LMRA's six-month time window.  Id. at 638.  The district court disagreed, finding that the discovery rule for hybrid claims "imposes a duty to exercise due diligence, which means familiarity with the collective bargaining agreement, and the making of such inquiries as would be reasonably calculated to acquire the pertinent information concerning the union's breach."  Id. at 639  (internal citations and quotation marks omitted).  Because the plaintiff did not make any inquiries regarding his rights under the agreement or argue that his union mislead him, his ignorance of the agreement's terms was not enough to toll the statute of limitations.  Id.

Accordingly, Plaintiff's claims fail because his presently-alleged breach of contract claims do not survive the pleading standards of the Federal Civil Rules, and even if they did, they would be time-barred.  See id.  ("The breach-of-contract action cannot survive GCI's 12(b)(6) motion, not because the six-month statute of limitations governs, but because the limitation would govern if [the plaintiff] had complied with the demands of applicable law and properly pleaded her complaint.").  As such, his claims would be dismissed by the Court in either scenario.

Further, even if Pilvalis's breach of contract claims were timely and satisfied the Rule 12(b)(6) pleading requirements, there is no suggestion whatsoever from the pleadings that he pursued the appropriate grievance procedures and remedies likely to be found in his collective bargaining agreement.  "It is well established that in order to maintain a § 301 action on a labor

---

The same logic applies to this case.  Pilvalis's argument for tolling the statute is that he was unfamiliar with the alleged breach of the collective bargaining agreement until he received the salary survey in 2007 or 2008.  However, the record does not suggest that Pilvalis made any inquiries regarding his rights under the agreement, nor does he claim that he was mislead by his union.  As such, his mere ignorance is insufficient to constitute a basis for a tolling of the statute.

Finally, the Court briefly pauses to recognize that both parties dedicated a significant portion of their filings to a discussion of New Jersey's discovery rule as applied to state breach of contract claims.  However, New Jersey's statute of limitations — and thereby its discovery rule — are inapplicable here because this is a hybrid action under the LMRA to which the federal six-month statute of limitations applies.  As such, the parties' arguments on these grounds are without merit.

contract, an employee must first exhaust the grievance and arbitration provisions of a contract." Carpenter, 2009 WL 4756258 at *3 (citing Koshatka v. Phila. Newspapers, Inc., 762 F.2d 329, 334 (3d Cir. 1985); Rep. Steel Corp. v. Maddox, 379 U.S. 650, 652 (1965)) (further citations omitted); see also Carrington, 762 F.Supp. at 637 (D.N.J. 1991) (citing DelCostello, 462 U.S. at 163) ("[A]n employee who brings a claim . . . against an employer for breach of a collective bargaining agreement is first required to exhaust any grievance or arbitration remedies provided in the collective bargaining agreement."). The Third Circuit has recognized that "[a]ggrieved employees must exhaust their CBA's grievance and arbitration procedures before filing a complaint in federal court unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." Carpenter, 2009 WL 4756258 at *3 (citing Angst v. Mack Trucks, Inc., 969 F.2d 1530, 1536 (3d Cir. 1992); United Steelworkers of Amer. v. Warrior & Gulf Navigation, Co., 363 U.S. 574, 582–83 (1960)) (internal quotation marks omitted).

Here, neither party has identified any existing grievance or arbitration procedures outlined in the applicable collective bargaining agreement, nor have they provided the Court with a copy of the agreement. Ordinarily, an order to show cause as to

28

why Pilvalis's breach of contract claims should not be dismissed for failure to exhaust his administrative remedies as provided by his collective bargaining agreement might be customary.  <u>See Price</u>, 2006 WL 3393686 at *6.  However, given the circumstances present here — namely, that Plaintiff's breach of contract claims are unlikely to survive either Rule 12(b)(6) or the six-month statute of limitations — coupled with Plaintiff's assumed failure to exhaust his administrative remedies, counsels for, rather than against, dismissal of his claims.  As such, Pilvalis breach of contract claims in Counts A, B, and C of his Amended Complaint are dismissed.

### B. Preemption of the Promissory Estoppel and Intentional Infliction of Emotional Distress Claims

Defendant also avers that Pilvalis's promissory estoppel and intentional infliction of emotional distress claims should be dismissed because they fail to meet the pleading standards of Federal Civil Rule 12(b)(6).  Before reaching Defendants' arguments on these points, however, the Court considers the role federal preemption may play with respect to these claims.

In <u>Allis-Chalmers Corp. v. Lueck</u>, 471 U.S. 202 (1985), the Supreme Court extended the preemptive reach of the LMRA in finding that § 301 applied to both contract and tort actions. Specifically, the Court held that "questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be

29

resolved by reference to uniform federal law, whether such questions arise in the context of a suit for breach of contract or in a suit alleging liability in tort." Id. at 211.  In Caterpillar, Inc. v. Williams, 482 U.S. 386, 394 (1987), the Supreme Court refined its prior rulings on § 301 preemption and held that a state law claim will be preempted if it is: (1) founded directly on rights created by a collective bargaining agreement, or (2) substantially dependent upon or inextricably intertwined with an analysis of a collective bargaining agreement.  Id.; see also Leonardis v. Burns Intn'l Sec. Servs., Inc., 808 F.Supp. 1165, 1174 (D.N.J. 1992); Shanefelter v. U.S. Steel Corp., 784 F.Supp.2d 550, 558 (W.D. Pa. 2011).

### 1.  Promissory Estoppel

It has previously been recognized in this District that "[c]laims sounding in both breach of contract and promissory estoppel implicate the same concerns with regard to Section 301." Leonardis, 808 F.Supp. at 1182.  In fact, given the high degree of commonality between the two, many courts that "have confronted state law claims for both breach of an independent contract and promissory estoppel in the context of Section 301 preemption . . . have often analyzed the preemption question without distinguishing between the contract and promissory estoppel claims." Id. at 1182–83 (citing Fox v. Parker Hannifin Corp., 914 F.2d 795, 801 (6th Cir. 1990); Ulrich v. Goodyear Tire &

30

Rubber Co., 884 F.2d 936, 938 (6th Cir. 1989); Bache v. Am. Tel.
& Tel., 840 F.2d 283, 286 n.1 (5th Cir. 1988); Darden v. U.S.
Steel Corp., 830 F.2d 1116, 1120 (11th Cir. 1987)) (further
citation omitted).  In Leonardis, the plaintiffs brought both
breach of contract and promissory estoppel claims against their
former employer and union in a hybrid § 301 action.  Id.  The
district court first considered the plaintiffs' direct breach of
contract claim, and found that it was preempted by the LMRA
because it was substantially dependent upon and inextricably
intertwined with an interpretation of the applicable collective
bargaining agreement.  Id. at 1175–81.  As to the promissory
estoppel claim, the court found that it was likewise preempted
because "promissory estoppel is a cause of action closely-related
to breach of contract; its purpose is to compensate those who
have reasonably relied on the promise of another, although the
complete elements of a claim for breach of contract — such as
mutual consideration — cannot be made out."  Id. at 1182
(internal citations omitted).  Thus, since both the breach of
contract and promissory estoppel claims arose from the same set
of facts, were based on the same conduct, and rooted in the same
collective bargaining agreement, the court found § 301 preempted
both claims.  Id.

     This Court finds Leonardis to be instructive with respect to
the instant facts.  Here, Pilvalis argues that he detrimentally

31

relied on Lockheed Martin's alleged promise to promote him to a
superior position and pay him a senior level salary, as defined
in and governed by his collective bargaining agreement.  (Am.
Compl. at 2-3.)  Pilvalis further asserts that he maintained
certain rights under the collective bargaining agreement, and
Defendant breached its promise to him by failing to provide him
with information related to these rights.  (Id.)  Pilvalis's
promissory estoppel claim is thus directly related to his breach
of contract claims.  Just as in Leonardis, both claims arise from
the same set of facts, arise from the same dates and conduct, and
are substantially dependent upon and inextricably intertwined
with the Lockheed Martin-ASPEP collective bargaining agreement.
Thus, § 301 preemption prevails over both the breach of contract
and promissory estoppel claims.  By necessity, therefore, since
Pilvalis's breach of contract claims fail, his promissory
estoppel claim must fail as well.

### 2.   Intentional Infliction of Emotional Distress

"An emotional distress claim is not preempted when it can be
resolved without examination or interpretation of the collective
bargaining agreement."  Urgent v. Hovensa, LLC, No.Civ.A.06-105,
2008 WL 4526677 (D.V.I. Oct. 2, 2008) (citing Tellez v. Pac. Gas
& Elec. Co., 817 F.2d 536, 539 (9th Cir.1987); Furillo v. Dana
Corp., Parish Div., 866 F.Supp. 842, 850 (E.D. Pa. 1994)). "A
claim is not preempted if it does not threaten significantly the

32

collective bargaining process and if it furthers a state interest in protecting the public that transcends the employment relationship." <u>Urgent</u>, 2008 WL 4526677 at *6 (internal citations omitted). In short, "[t]he question before the court is whether resolution of [the] plaintiff's emotional distress claims are dependent upon an interpretation of the [collective bargaining agreement]." <u>Id.</u> (citing <u>Hawaiian Airlines, Inc. v. Norris</u>, 512 U.S. 246, 261 (1994)). In <u>Urgent</u>, the plaintiff claimed that she suffered emotional distress as a result of her employer's wrongful termination of her employment. <u>Id.</u> at *6. The district court found that the plaintiff's intentional infliction of emotional distress claim was preempted by the LMRA because resolution would require the court to consider whether her employer properly discharged her, an inquiry intertwined with her collective bargaining agreement. <u>Id.</u> at *7.

In Count E of his Amended Complaint, Plaintiff cursorily alleges that "Defendant's unlawful conduct as previously described in this Complaint, was known to the Defendant to be likely to produce emotional distress in the Plaintiff, and it did in fact produce emotional distress in the Plaintiff." (Am. Compl. at 4.) As evidenced by his own words, Plaintiff acknowledges that his emotional distress claim is related to the other claims in his complaint, all of which have been found by the Court to be preempted because they are substantially related

33

to or inextricably intertwined with an analysis of his collective bargaining agreement.  Indeed, before the Court can find that Pilvalis suffered emotional distress as a result of Lockheed Martin's breach of his contract, it must first find that the applicable contract — in this case, the collective bargaining agreement — was in fact breached.   As such, his emotional distress claim cannot be "resolved without examination or interpretation of the collective bargaining agreement." Urgent, 2008 WL 4526677 at *6.  Nor does Pilavalis's emotional distress claim appear to "further[] a state interest in protecting the public that transcends the employment relationship." Id. (internal citations omitted).  Thus, Plaintiff's claim for intentional infliction of emotional distress is likewise preempted by § 301 of the LMRA, and must fail because he has not properly plead his § 301 claim here.  Accordingly, this claim will likewise be dismissed.


**V.    CONCLUSION**

For the reasons set forth above, the Court finds that all of Plaintiff's claims in his Amended Complaint are federally preempted by § 301 of the LMRA.  Plaintiff has not, however, properly alleged a § 301 claim, and, even if he had done so, his claims would be deemed untimely.  Accordingly, Defendant Lockheed Martin's Motion to Dismiss Plaintiff's Amended Complaint will be

granted.[11]

An appropriate Order follows.

/s/ Noel L. Hillman
_____
At Camden, New Jersey                    NOEL L. HILLMAN, U.S.D.J.

Dated:    3/20/13

---

[11] Ordinarily, the Court would provide a pro se plaintiff an opportunity to amend his complaint.  Here, however, Plaintiff has already availed himself of two bites at the apple.  Moreover, it is clear that no amendment can cure the legal deficiencies of the Amended Complaint.  No opportunity to amend is required where amendment would be futile.  See Napolitano v. Haven Homes, Inc., No.Civ.A.10-1712, 2012 U.S. Dist. LEXIS 9383, at *14-15 (D.N.J. Jan. 26, 2012).